## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| EDA BURUK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 23-10537-MJJ |
| ) | |
| EXPERIAN INFORMATION SOLUTIONS, ) | |
| INC., TRANS UNION, LLC, and BANK OF ) | |
| AMERICA, N.A., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION

May 6, 2024

JOUN, D.J.

On March 10, 2023, plaintiff Eda Buruk ("Buruk") filed a complaint against defendants Equifax Information Services, LLC[1], Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC, and Bank of America N.A. alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. [Doc. No. 1]. On December 13, 2023, Experian filed a Motion to Compel Buruk's claims against Experian to arbitration and to stay this action as to Experian until arbitration has been completed. [Doc. Nos. 46, 47]. Buruk opposed the Motion on January 10, 2024, followed by Experian's reply on January 15, 2024. [Doc. Nos. 55, 58]. For the reasons set forth below, Experian's Motion to Compel Arbitration is GRANTED.

---

[1] On March 29, 2024, Buruk dismissed all claims against Equifax Information Services, LLC. [Doc. No. 67].

## I.     BACKGROUND

The Court draws the following facts from the documents submitted in relation to the motion to compel arbitration, "construe[s] the record in the light most favorable to the non-moving party[,] and draw[s] all reasonable inferences in its favor." *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 175 (1st Cir. 2021).

### A.  Facts

On August 2, 2022, Buruk enrolled in CreditWorks. [Doc. No. 47-1 at ¶ 3]. CreditWorks stores its consumer enrollment and account information in Experian's databases. [*Id.* at ¶ 1]. To enroll in this platform, Buruk was required to fill out a webform with her personal information and then click the "Create Your Account" button on the webform. [*Id.* at ¶ 3]. Above the "Create Your Account," the webform also contained the following disclosure: "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." [*Id.*; Doc. No. 47-2 at 2]. The phrase "Terms of Use Agreement" ("Terms of Use") in the disclosure was in blue text and contained a hyperlink to the full text of the Terms of Use. [Doc. No. 47-1 at ¶ 4; Doc. No. 47-2 at 2]. After entering her information, Buruk clicked the "Create Your Account" button, thereby accepting and agreeing to the Terms of Use. [Doc. No. 47-1 at ¶ 5].

Every version of the Terms of Use that was in effect during Buruk's enrollment contained an Arbitration Agreement ("Agreement"), which required her to litigate all claims against "ECS" that "relate to" or "arise out of" her membership in arbitration. [*Id.* at ¶ 6; Doc. No. 47-3 at 8-11; Doc. No. 47-4 at 7-10]. The Agreement defined "ECS" to include its "affiliates," which included Experian. [Doc. No. 47-1 at ¶ 6; Doc. No. 47-3 at 9; Doc. No. 47-4 at 8]. Every version of the Terms of Use in effect during Buruk's enrollment also included a section titled "Amendments,"

which advised her that she would be bound by the then-current Terms of Use each time she

"order[ed], access[ed], or use[d] any of the Services or Websites described in the Terms of Use.

[Doc. No. 47-1 at ¶ 7; Doc. No. 47-3 at 5; Doc. No. 47-4 at 5]. The Agreement further stated:

> All issues are for the arbitrator to decide, including the scope and enforceability of
> this arbitration provision as well as the Agreement's other terms and conditions, and
> the arbitrator shall have exclusive authority to resolve any such dispute relating to
> the scope and enforceability of this arbitration provision or any other term of this
> Agreement including, but not limited to any claim that all or any part of this
> arbitration provision or Agreement is void or voidable.

[Doc. No. 47-3 at 9-10; Doc. No. 47-4 at 9].[2]

### B. Procedural History

On March 10, 2023, Buruk filed suit against Experian and other entities for alleged

violations of the Fair Credit Reporting Act. [Doc. No. 1]. On April 6, 2023, counsel for Experian

emailed counsel for Buruk, stating Experian needed additional time to investigate Buruk's claims

and file an Answer to the Complaint. [Doc. No. 55-2 at 2]. A few days later, on April 10, 2023,

Experian's counsel sent an email requesting Buruk's identifying information from her counsel.

[Doc. No. 55-3]. Buruk's counsel responded with the requested information and assented to an

extension for the filing of Experian's Answer. [*Id*.]. On April 11, 2023, Experian filed a motion

for an extension to file its Answer, which the Court granted. [Doc. Nos. 11-12]. On May 15,

2023, Experian requested an additional extension, to which Buruk assented, and the Court

granted the extension. [Doc. No. 55-4; Doc. Nos. 24-25]. On May 22, 2023, Experian filed its

Answer and asserted various affirmative defenses. [Doc. No. 28]. Experian did not raise the issue

of arbitration in its Answer. [*Id*.].

---

[2] In its Motion, Experian appears to have incorrectly identified the language in the arbitration clause as, "All issues
are for the arbitrator to decide including, but not limited to, . . . all issues regarding arbitrability." [Doc. No. 47 at
13-15].

Leading up to August 3, 2023, both parties engaged in email and telephone communications to discuss the possibility of settlement and to prepare a Joint Statement and Scheduling Order for the Court. [Doc. No. 55-1 at ¶¶ 5-6]. Buruk also provided Experian with documents to support her claim, in connection with the settlement discussions. [Doc. No. 55-1 at ¶ 7]. On August 4, 2023, Experian filed a Certification of Compliance with Local Rule 16.1(d)(3), certifying that it had conferred with its counsel "to consider the resolution of the litigation through the use of alternative dispute resolution programs." [Doc. No. 34]. On September 7, 2023, the parties participated in a Scheduling Conference, during which the Court adopted the parties' proposed Scheduling Order. [Doc. No. 44]. Fact discovery was set to close on March 29, 2024, and a trial date was set for January 27, 2025. [*Id*.; Doc. No. 33 at 1-2].

On September 21, 2023, Experian provided Buruk with its initial disclosures. [Doc. No. 55-1 at ¶ 8]. Buruk and all Defendants, including Experian, served their written discovery requests prior to December 8, 2023, in accordance with the Scheduling Order. [*Id.* at ¶ 9; Doc. No. 33 at 1-2]. Shortly thereafter, on December 11, 2023, Experian's counsel indicated that Experian intended to compel this case to arbitration, [Doc. No. 55-1 at ¶ 10], and Experian filed the Motion to Compel Arbitration on December 13, 2023. [Doc. No. 46].

On January 2, 2024, Experian filed an assented-to Motion to Stay Discovery, pending resolution of Experian's Motion to Compel Arbitration. [Doc. No. 49]. Experian noted, "As of the date of this motion, no party has served responses or objections, formally produced documents, or noticed depositions." [*Id*. at ¶ 10].

## II.   LEGAL STANDARD

The Court has the power to compel arbitration under the Federal Arbitration Act ("FAA"). 9 U.S.C. § 4. A motion to compel arbitration should be evaluated "against the

summary judgment standard to determine whether a genuine dispute of fact exists regarding the parties' agreement to arbitrate." *Air-Con, Inc.*, 21 F.4th at 176.

"[T]he FAA requires courts to treat arbitration as a matter of contract and enforce agreements to arbitrate according to their terms." *Id.*, 21 F.4th at 174 (cleaned up). But the FAA does not compel "a party ... to submit to arbitration any dispute which [it] has not agreed so to submit." *McCarthy v. Azure*, 22 F.3d 351, 354 (1st Cir. 1994). Thus, a party that moves to compel arbitration "must show [1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope." *Hogan v. SPAR Grp., Inc.*, 914 F.3d 34, 38 (1st Cir. 2019) (quoting *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 36 (1st Cir. 2017)).

## III.   ANALYSIS

Experian asserts that the Agreement is valid and that Experian may directly enforce the Agreement, and Buruk does not dispute these points. The only questions before the Court are (1) whether the Agreement delegates to arbitration the question of whether Experian waived its right to arbitrate Buruk's claims, and (2) if not, whether Experian indeed waived its right to arbitration.

### A.   Delegation of Arbitrability and Waiver Issue

As an initial matter, Experian claims that any dispute over the arbitrability of Buruk's claims has been delegated to an arbitrator. Buruk does not address this question in her Opposition. There is "a presumption that courts (not arbitrators) must 'resolve gateway disputes about whether a particular arbitration clause binds parties in a particular case.'" *McKenzie v. Brannan*, 19 F.4th 8, 17 (1st Cir. 2021) (quoting *Barbosa v. Midland Credit Mgmt., Inc*, 981 F.3d 82, 93 n.13 (1st Cir. 2020)). This presumption may be overcome when "there is a clear and

unmistakable delegation of arbitrability issues" by a valid arbitration agreement. *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 28 (1st Cir. 2021).

Here, the Agreement provides, "The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, 'AAA Rules') of the American Arbitration Association ('AAA'), as modified by this Agreement, and will be administered by the AAA. … In all events, the AAA Rules shall govern the parties' dispute." [Doc. No. 47-3 at 9; Doc. No. 47-4 at 9]. And the AAA Rules state that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." Am. Arb. Ass'n, *Com. Arb. Rules and Mediation Procs.*, Rule 7(a) (2022). Thus, issues of arbitrability have been delegated to the arbitrator here. *See Bossé*, 992 F.3d at 29 ("Incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability issues to the arbitrator." (citing *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009))).

However, whether Experian has waived its right to arbitrate claims "is a different issue that does not depend on the underlying arbitrability of the dispute." *In re Intuniv Antitrust Litig.*, No. 16-cv-12653, 2021 WL 517386, at *8 (D. Mass. Feb. 11, 2021). The determination of waiver by litigation conduct "is presumptively an issue for the court" to decide. *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 14 (1st Cir. 2005). But that presumption may be rebutted "where there is 'clear and unmistakable evidence' of such an intent in the arbitration agreement," *id.*, and Experian argues that such evidence exists here—primarily based on the Agreement's

pronouncement that "[a]ll issues are for the arbitrator to decide." [Doc. No. 47-3 at 9; Doc. No. 47-4 at 9].

Courts that have evaluated this issue in the context of the same language and arbitration provision are split. Where the Agreement here does not explicitly state that the issue of waiver is subject to arbitration, I agree with the cases finding that the "all issues" language "does not evince clear and unmistakable evidence of delegation of this issue." *Liu v. Equifax Info. Servs., LLC*, No. 22-cv-10638, 2024 WL 308089, at *6 (D. Mass. Jan. 26, 2024) ("The Court … finds that without an explicit reference to waiver or similar terms, the language of the Arbitration Provision, though broad, is insufficient to evince a 'clear and unmistakable' intent by the parties to have an arbitrator decide the issue of waiver by litigation conduct."); *see also, e.g.*, *Coronel v. Bank of Am., N.A.*, No. 19-cv-08492, 2022 WL 3443985, at *3 (D.N.J. Aug. 17, 2022) ("While the delegation provision says all issues are for the arbitrator to decide, it does not evince a clear and unmistakable intent to have the arbitrator decide the issue of waiver" because "the delegation provision does not mention waiver explicitly ... and there is no indication that 'all issues' include those issues that arise only during litigation." (cleaned up)); *Solis v. Experian Info. Sols., Inc.*, 629 F. Supp. 3d 1016, 1019–20 (C.D. Cal. 2022) ("The language in the [Arbitration Provision]— '[a]ll issues are for the arbitrator to decide, including the scope and enforceability,' ... is ... insufficient to overcome the presumption.... [T]he language here is not so 'clear' and 'unmistakable' to encompass waiver through litigation conduct."); *Alvarez v. Experian Info. Sols., Inc.*, No. 19-cv-03343, 2023 WL 2519249, at *7 (E.D.N.Y. Mar. 15, 2023) ("When the party seeking arbitration has participated in litigation regarding the dispute, the district court can properly decide the question of waiver" (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80–81

(2d Cir. 2017))). Thus, the Court finds that the question of waiver by litigation conduct has not

been delegated to the arbitrator, leaving the issue within the Court's purview.

## B.  Waiver of Arbitration by Litigation Conduct

The party arguing waiver by conduct bears the burden to prove waiver. *See Toddle Inn*

*Franchising, LLC v. KPJ Associates, LLC*, 8 F.4th 56, 64 (1st Cir. 2021). Generally, there is a

"strong presumption *against* inferring waiver—so strong that any reasonable doubts as to

whether a party has waived the right to arbitrate should be resolved in favor of arbitration." *Id.*

(cleaned up) (emphasis in original). To determine waiver of an arbitration clause by litigation

conduct, the Court will consider these non-exclusive factors:

> (1) whether the parties participated in a lawsuit or took other action inconsistent
> with arbitration; (2) whether the "litigation machinery has been substantially
> invoked and the parties [are] well into preparation of a lawsuit by the time an
> intention to arbitrate [is] communicated"; (3) "whether there has been a long delay"
> and trial is near at hand; (4) whether the party seeking to compel arbitration has
> "invoked the jurisdiction of the court by filing a counterclaim"; and (5) whether
> discovery not available in arbitration has occurred[.]

*FPE Found. v. Cohen*, 801 F.3d 25, 29 (1st Cir. 2015) (quoting *Restoration Pres. Masonry v.*

*Grove Eur., Ltd.*, 325 F.3d 54, 60-61 (1st Cir. 2003)).[3] These factors should be considered to the

extent that they clarify whether Experian "knowingly relinquish[ed] the right to arbitrate by

acting inconsistently with that right." *Morgan*, 596 U.S. at 419. "[T]here is no bright-line rule for

a waiver of arbitral rights, and each case is to be judged on its particular facts." *Tyco Int'l Ltd. v.*

*Swartz (In re Tyco Int'l Ltd. Sec. Litig.)*, 422 F.3d 41, 46 (1st Cir. 2005).

Upon consideration of the various factors, the Court finds that Experian's actions fall

short of waiving its right to arbitration. Admittedly, Experian moved to compel arbitration nine

months after suit was filed. During that time, Experian did not raise arbitration as an affirmative

---

[3] The Supreme Court rejected a sixth factor—whether the party asserting waiver has suffered prejudice. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022). Accordingly, this Court will not consider prejudice in this analysis.

defense in its Answer or during any conversations with counsel, and the parties engaged in settlement negotiations, exchanged initial disclosures, and propounded discovery requests. Nevertheless, while discovery requests were exchanged, none of the parties responded to discovery or noticed any depositions prior to the filing of Experian's Motion to Compel Arbitration. Experian moved to stay discovery shortly after filing its Motion to Compel, several months prior to the close of fact discovery. Experian refrained from participating in any other litigation conduct, such as asserting any counterclaim or participating in mediation. And there was no "trial near at hand" at the time Experian moved to compel arbitration, where the case was set for trial on January 27, 2025—over a year later. *FPE*, 801 F.3d at 29.

As such, the totality of Experian's conduct in this litigation has not been inconsistent with asserting a right to arbitrate or *substantially* invoking the litigation machinery. *Compare Crean v. Morgan Stanley Smith Barney, LLC*, 652 F. Supp. 3d 171, 184 (2023) (finding defendant had "engaged in relatively minimal litigation" prior to moving for arbitration, where it partook in settlement discussions but "did not respond to the interrogatories, documents requests, and requests for admission"), *with Liu*, 2024 WL 308089, at *9 (finding waiver, "[a]lthough a close question," where Experian "filed two answers (without raising arbitration as an affirmative defense), agreed to [plaintiff] filing an amended complaint, engaged in and completed discovery, participated in a court-sponsored mediation, and sought extensions of case deadlines" in the fifteen months prior to asserting arbitration). Accordingly, the Court finds that Experian did not waive its right to arbitrate the claims asserted in the Complaint.

**IV.     CONCLUSION**

For the foregoing reasons, Experian's Motion to Compel Arbitration is <u>GRANTED</u>. Further, this matter is <u>STAYED</u> as to Experian only, pending resolution in the arbitration proceedings. *See* 9 U.S.C. § 3. The parties shall notify the Court within seven days of the conclusion of the arbitration.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge